IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GBENGA BENSON OGUNDELE,** | * | |
| Petitioner, | * | |
| v. | * | |
| | | **Crim. No. DLB-15-277** |
| **UNITED STATES OF AMERICA,** | * | **(Related Civ. No. DLB-21-479)** |
| Respondent. | * | |

## MEMORANDUM OPINION

Gbenga Benson Ogundele filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF 1003, 1027, 1027-1. Ogundele claims his Fifth, Sixth, and Fourteenth Amendment rights were violated at trial and sentencing and that his conviction should be set aside. ECF 1027-1. The government opposes the motion. ECF 1040. Ogundele filed a reply. ECF 1041. No evidentiary hearing is necessary because the motion and the record conclusively show that Ogundele is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). For the following reasons, Ogundele's § 2255 motion is denied.

**I.    Background**

In May 2015, a grand jury indicted Ogundele and nine others, charging them with a "romance fraud" scheme that targeted elderly individuals they met online. The indictment charged all defendants with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). In addition, the indictment charged Ogundele and two other defendants with aggravated identify theft in violation of 18 U.S.C. § 1028A.

Four of the defendants, including Ogundele, went to trial in November 2016.[1] At trial, the government introduced evidence that Ogundele and his wife's half-brother, Mukhtar Haruna, were at the center of this fraud scheme. Eleven elderly victims testified about how they believed they were in a legitimate long-distance relationship with someone they met online. Eventually, the supposed long-distance partner would solicit funds from the victims, and the victims, believing they were helping someone they cared about, transferred substantial sums of money to defendant-controlled bank accounts, which the defendants quickly transferred to other accounts. Employees of Bank of America, Capital One, and Wells Fargo testified about the transfers in and out of the defendants' bank accounts.

Through the testimony of FBI agents, the government introduced into evidence incriminating information seized from the defendants' email accounts, cell phones, and homes. The FBI agents also testified about statements the defendants made in post-arrest interviews with law enforcement, including incriminating statements Ogundele made to the FBI. The government introduced the testimony of David Rutledge, an FBI forensic accountant, who testified about summary charts detailing selected transactions in Ogundele's bank accounts from 2011 through 2014. Over Ogundele's counsel's objections, the trial court admitted the charts as evidence under Federal Rule of Evidence 1006, and Rutledge testified about the financial transactions in the chart.

In their case, the defendants called several witnesses. Two co-defendants, Victor Oloyede and Babatunde Popoola, testified in their own defense. Generally, they blamed Haruna, who they said made them believe the money transferred into their bank accounts was for the purchase of cars for export to Nigeria, and they blamed Ogundele.

---

[1] One defendant, Olusola Olla, later went to trial in June 2017.

The jury returned a verdict of guilty on all counts against all defendants. At Ogundele's sentencing, the Court calculated the sentencing guidelines. Because the counts of conviction involved fraud, the Court had to determine the loss amount under U.S.S.G. § 2B1.1(b)(1). The presentence investigation report calculated the loss amount as more than $9.5 million but less than $25 million, resulting in a 20-level increase. Ogundele's counsel objected to this loss amount, arguing it was inflated because it attributed to Ogundele losses caused by other defendants. The government argued the loss attributable to Ogundele was more than $1.5 million but less than $3.5 million. The Court agreed with the government and applied a 16-level enhancement to Ogundele's offense level based on that loss amount. The Court sentenced Ogundele to a total of 234 months of incarceration on all counts.

Ogundele timely appealed to the United States Court of Appeals for the Fourth Circuit. He argued, among other things, that the summary charts should not have been introduced into evidence and that the Court erred by imposing the 16-level increase for loss. The Fourth Circuit affirmed his conviction and sentence in a published opinion. *United States v. Oloyede*, 933 F.3d 302 (4th Cir. 2019). Ogundele filed a writ of certiorari, which the Supreme Court denied on February 24, 2020. *Ogundele v. United States*, 140 S. Ct. 1213 (Mem) (2020). That day, Ogundele's conviction became final, and the one-year statute of limitations clock for filing a § 2255 motion began. *See* 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 525 (2003). The deadline for filing a § 2255 motion was February 24, 2021.

On February 16, 2021, Ogundele filed a motion "for an extension on his § 2255 motion."[2] ECF 1003. He requested an additional 90 days to "prepare a proper legal argument to present before this Court." *Id.* On August 19, 2021, the Court the informed Ogundele that it intended to construe the February 16, 2021 filing as a § 2255 motion. ECF 1020. The Court granted Ogundele

> twenty-eight days to notify this Court in writing whether: 1) he objects to this Court construing the pleading filed as a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255; 2) he wants to withdraw this pleading; or 3) he wants to amend the pleading so that it contains all of the claims he wants to raise. *See Castro v. United States*, 540 U.S. 375, 382–83 (2003) (holding that when a district court proposes to construe a post-conviction motion as a movant's first collateral attack of a judgment under 28 U.S.C. § 2255, it is required to notify the movant of the restrictions and limitations under section 2255).

*Id.* at 1. The Court also explained § 2255's statute of limitations. *Id.* at 1–2.

On September 7, 2021, Ogundele responded to the August 19 Order. ECF 1024. He objected to the Court construing his February 16 filing "as a formal Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255." *Id.* He asked the Court to "consider this letter as a Motion to Withdraw petitioner's previously filed 'Motion for Extension of Time' and, without objection, submit the attached Request for Filing Extension into the record." *Id.* That same day, Ogundele filed another request to extend the deadline for a § 2255 motion by 90 days. ECF 1025.

On September 22, 2021, the Court issued another Order. This time, the Court explained to Ogundele that it lacked jurisdiction to extend the time to file a § 2255 motion "unless the extension

---

[2] Ogundele signed his motion on February 15, 2021, and it was mailed on February 16, 2021. ECF 1003, at 1–2. Thus, it was filed no later than February 16. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (noting that, for a prisoner, "filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk"). The filing was docketed on February 22. ECF 1003.

4

motion is accompanied by or preceded by a motion to vacate." ECF 1026, at 1 (citing cases). The Court continued:

> The Court will grant Ogundele until October 25, 2021, to clarify whether he wants his February 22, 2021 filing treated as a § 2255 petition, to complete a § 2255 motion form to the best of his ability, and to request an extension of time to file a supplement to the § 2255 motion as appropriate. On the § 2255 form motion, Ogundele may present reasons why he believes his motion, if untimely filed, is subject to equitable tolling. If Ogundele informs the Court that he wants to withdraw the § 2255 motion or declines to complete the § 2255 form motion to present claims for relief, his § 2255 motion and requests for extensions of time will be denied and dismissed without prejudice.

*Id.* at 2.

On October 21, 2021, Ogundele filed a Motion to Vacate, Set Aside, or Correct Sentence and a Memorandum in Support of the Motion to Vacate, Set Aside, or Correct Sentence. ECF 1027, 1027-1. The government opposed the motion. ECF 1040. Ogundele replied. ECF 1041.[3]

The parties devote much of their briefing to discussing whether Ogundele has established equitable tolling to prevent dismissal of the § 2255 motion filed in October 2021. *See* ECF 1027-1, at 2–6; ECF 1040, at 6–9. The Court need not engage in the equitable tolling analysis. The Court takes its obligation to construe *pro se* pleadings liberally, *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 618 (4th Cir. 2020), and with that in mind, the Court construes the February 16, 2021 filing as a timely-filed § 2255 motion and the October 21, 2021 filings as supplements to the motion. The Court proceeds to the merits.[4]

## II.   Standard of Review

Section 2255 allows a prisoner in federal custody to move to vacate, set aside, or correct

---

[3] The Honorable Paul W. Grimm presided over Ogundele's trial and sentencing. Judge Grimm retired at the end of 2022. On November 30, 2022, this case was transferred to the undersigned.

[4] Even if the petition was not timely filed, it would not strip the Court of jurisdiction to hear the merits of the petition. *United States v. Prescott*, 221 F.3d 686, 687–88 (4th Cir. 2000).

their sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). The Court must hold an evidentiary hearing on such a motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," in which case dismissal is appropriate. *Id.* § 2255(b); *see Mayhew*, 995 F.3d at 176.

A habeas petition is not an alternative to a direct appeal. Claims raised on direct appeal may not be relitigated in a § 2255 petition because a petitioner cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). And, when a claim "could have been but w[as] not pursued on direct appeal," the court will not consider it on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999); *see United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006)). Such procedurally defaulted claims may be considered only "when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *Pettiford*, 612 F.3d at 280. To establish prejudice, a petitioner must show the mistake he complains of "worked to his actual and substantial disadvantage." *United States v. McKinney*, 60 F.4th 188, 195 (4th Cir. 2023) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means the petitioner must show a substantial likelihood of a different result in the absence of the error. *Frady*, 456 U.S. at 172–74. Claims of ineffective assistance of counsel are an exception to this rule because such claims ordinarily are not litigated on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see also United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010)

(noting ineffective assistance of counsel claims are considered on direct appeal "only where the record conclusively establishes ineffective assistance").

### III. Discussion

Ogundele claims his constitutional rights were violated by the improper admission of the Rule 1006 summary charts into evidence at trial and by their consideration at sentencing. Ogundele also claims his trial counsel provided ineffective assistance. None of his claims has merit.

#### A. Rule 1006 Summary Charts

Ogundele claims his constitutional rights were violated at trial and at sentencing because the Court improperly admitted into evidence under Rule 1006 summary charts of financial transactions selected by the government that showed the victims wired funds into accounts controlled by Ogundele and that Ogundele then transferred the funds to accounts outside the United States. This error, he claims, violated his Fifth Amendment due process right. Ogundele also argues his Sixth Amendment right to confront witnesses was violated because the government did not introduce the charts through the agent who "determined what criteria qualified [as] an alleged fraudulent transaction." ECF 1027-1, at 9. Ogundele says he was unable to cross-examine the agent who did introduce the charts about why some transactions were included but others were not because the sponsoring agent did not make those decisions. Finally, Ogundele claims the Court erred at sentencing when it applied a guidelines enhancement for loss amount based on the summary charts.

These claims are foreclosed by the Fourth Circuit's decision affirming Ogundele's conviction and sentence. On direct appeal, Ogundele argued that the trial court "abused its discretion in admitting into evidence under Federal Rule of Evidence 1006 a series of charts detailing selected deposits made into [his] bank accounts." *Oloyede*, 933 F.3d at 310. He argued

7

that the charts included deposits related to a "subjective list" of suspected victims and represented an "editorialized subsection of transactions." *Id.* He said, "many of the charts' entries, including those reflecting many of the cash deposits, were never proven to be related to fraudulent activity, but that admitting the charts into evidence implied that every entry was fraudulent." *Id.*

The Fourth Circuit agreed that the charts did not comport with Federal Rule of Evidence 1006 "because of their selectivity." *Id.* "They did not fully represent the accounts that they were purportedly summarizing." *Id.* A chart admissible under Rule 1006 must be "an objectively accurate summarization of the underlying documents, not a skewed selection of some of the documents to further the proponent's theory of the case." *Id.* at 311. The government in this case "was not using the charts as surrogate evidence offered in lieu of voluminous underlying bank records, but rather was seeking to help the jury understand how various related records demonstrated a pattern of suspicious activity engaged in by the defendants." *Id.* While the charts could have been shown to the jury under Federal Rule of Evidence 611(a), it was improper to admit them into evidence under Rule 1006. *Id.*

Nonetheless, the Fourth Circuit held the erroneous evidentiary ruling was harmless: "[W]e are confident that *the error did not affect the defendants' substantial rights*, particularly as the same information in the same form could have been shown to the jury under Rule 611(a)." *Id.* at 311 (emphasis added). In his § 2255 motion, Olundeye appears to take issue with this holding, insisting that the "error led to substantial harm and a violation of [his] rights." ECF 1027-1, at 6; *see id.* at 8 ("charts under Rule 1006 unfairly prejudiced the jury's perception of Ogundele's alleged fraud"), 12 ("Ogundele's substantial rights were duly negatively impacted" by the summary charts). The Fourth Circuit rejected this claim. The court held that the introduction of the summary charts into evidence did not affect Ogundele's substantial rights at trial. This was

8

because the bank records referenced in the charts had been admitted into substantive evidence, and an agent could have testified about the significance of the selected bank records referenced in the 1006 charts with the aid of a pedagogical chart permissible under Rule 611(a). These issues were decided on appeal. Ogundele may not relitigate them in his § 2255 motion. *See Dyess*, 730 F.3d at 360.

Ogundele next argues his Sixth Amendment right to confront witnesses was violated because the agent who decided which transactions to include in the summary charts did not introduce the charts and the agent who did introduce the charts, Agent Rutledge, did not know why certain transactions were included and others were not. ECF 1027-1, at 8–9. The confrontation clause bars "extrajudicial 'testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination.'" *United States v. Jones*, 716 F.3d 851, 855 (4th Cir. 2013) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). The Supreme Court has "has limited the Confrontation Clause's reach to those statements 'made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial.'" *Id.* (quoting *Crawford*, 541 U.S. at 52).

As Ogundele sees it, he was unable to confront the government's witness because Agent Rutledge, the witness who sponsored the admission of the charts, did not know why certain financial transactions were included in the charts and others were not. This argument, framed as a confrontation clause violation, could have been but was not raised on appeal and is therefore procedurally defaulted. *See Mikalajunas*, 186 F.3d at 492–93; *Pettiford*, 612 F.3d at 280. Ogundele cannot overcome this procedural default because he cannot show prejudice. *Pettiford*, 612 F.3d at

280.[5] As the Fourth Circuit noted, Ogundele was "free to cross-examine the government's witnesses about the soundness" of the criteria that the government applied "to help present its theory of the case . . . just as if the charts had been shown to the jury under Rule 611(a)." *Oloyede*, 933 F.3d at 311. So, even if Ogundele could not cross-examine Rutledge about the criteria used to create the charts because Rutledge did not know the criteria, Ogundele could have asked other government witnesses about the selection criteria. Furthermore, even if Ogundele could not have elicited testimony about the selection criteria, he has not established a substantial likelihood that such testimony would have led to a different result in the trial. Indeed, the testimony likely would have reinforced the incriminating evidence against Ogundele by highlighting the financial transactions that the government believed established his guilt. Thus, Ogundele cannot establish prejudice to overcome the procedural default of this claim.

Finally, Ogundele argues he was prejudiced at sentencing because the Court relied on the improperly admitted summary charts when it applied the 16-level enhancement for loss amount. ECF 1027-1, at 18. Ogundele challenged the loss amount enhancement on appeal. He argued he should not have been held accountable for more than $1.5 million but less than $3.5 million in loss. The Fourth Circuit rejected this argument because the record showed that "this was a conservative estimate of loss for which he was accountable based on the activity in his own bank accounts." *Oloyede*, 933 F.3d at 319. This issue was litigated on direct appeal and cannot be challenged in a § 2255 motion. *See Dyess*, 730 F.3d at 360. Furthermore, this type of alleged error in the application of the sentencing guidelines is not grounds for relief in a § 2255 motion. *United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir. 1999) (holding that "barring extraordinary

---

[5] The Court need not decide whether Ogundele alleges a confrontation clause violation, because he cannot establish prejudice to overcome the procedural default.

circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding").

Ogundele is not entitled to relief under § 2255 based on the improperly admitted summary charts.

### B.     Ineffective Assistance of Counsel

Ogundele claims his counsel was ineffective because counsel did not demand production of exculpatory evidence that Ogundele says the FBI seized from his home.[6] ECF 1027-1, at 18–19. The alleged exculpatory evidence was an "accounts ledger" that reflected "currency exchanges with Haruna, a licensed currency broker in Nigeria." *Id.* at 18. The ledger "listed the linked cash deposits into his account completed by such currency exchanges," and these "cash transactions recorded in the ledger reflected cash deposit activity contained . . . in the government's summary charts." *Id.* Ogundele also claims his counsel was ineffective because counsel did not investigate "paid receipts and invoices in Nigeria that would have corresponded with the entries in the ledger and have invalidated listed, unverified transactions in the Rule 1006 charts." *Id.* at 20.

To help ensure our adversarial system produces just results, the Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the effective assistance of counsel. *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022). That test requires the petitioner to show that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Id.* Ultimately,

---

[6] The government maintains it made all materials seized pursuant to the warrant available to defense counsel and would prove it at an evidentiary hearing if one were held. ECF 1040, at 14 n.6.

11

the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To satisfy the deficient performance prong, a petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688. Performance is evaluated based on "'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 690); *see Carthorne*, 878 F.3d at 465. The "first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017).

To satisfy the prejudice prong in the context of trial representation, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In evaluating whether the petitioner has satisfied the two-pronged test in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Because failing either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*

The Court first addresses Ogundele's claim that his counsel did not demand the production of exculpatory evidence—an "accounts ledger" the FBI allegedly seized from his home. Other than his unsworn word, Ogundele offers no proof that the exculpatory ledger existed. Even if it existed and had been introduced into evidence at trial, Ogundele has not demonstrated a reasonable probability that the result of his trial would have been different. Ogundele argues the ledger and

related documents would have "showed a verified cash deposit corresponded to legitimate currency exchanges based upon auto sales," which would have "cast doubt" on the government's "subjective criteria used to compile the charts." ECF 1027-1, at 19. Even if such doubt had been cast, there was ample other evidence to support the jury's verdict. The government presented victim "testimony show[ing] that, between November 2012 and April 2014, five of them sent a total of approximately $140,000 to two business bank accounts controlled by Ogundele." *Oloyede*, 933 F.3d at 307; ECF 757, at 73–77; ECF 758, at 17–22, 171-185; ECF 759, at 64–68, 93–110. In Ogundele's email account, law enforcement found copies of a victim's government identification card and a letter from the victim to his bank, informing the bank that the victim intended to transfer $46,000 to Ogundele. ECF 757, at 80–82. The victim testified that he never sent Ogundele his identification and that he did not write the letter to his bank. *Id.* The government also introduced into evidence records of Ogundele's bank statements, cash deposit slips, and wire transfers connecting Ogundele to other members of the conspiracy. ECF 760, at 81–191. Ogundele's bank account records showed deposits made by victims and deposits made by co-conspirators in amounts that matched the deposits of other victims into the co-conspirators' accounts. ECF 760, at 83–84, 109–11. The evidence also showed that after the bank abruptly closed one of Ogundele's accounts, his wife, at his direction, accepted deposits into her account from victims and then quickly transferred the money to another one of his accounts. *Oloyede*, 933 F.3d at 308–309, 313.

And then there was Ogundele's post-arrest statements to law enforcement. He told the FBI that he did not know the people who were depositing substantial sums of money into his bank accounts and he made no effort to find out who they were, even though he suspected the transactions were fraudulent and that Haruna was engaged in fraud. ECF 764, at 161–69. Ogundele also admitted to the FBI that he believed the bank had closed one of his bank accounts due to

suspected fraudulent activity and that he nevertheless continued to transfer funds to Haruna in Nigeria through another bank account. *Id.* Ogundele told the FBI he directed Haruna to deposit cash into his account because Ogundele "was uncomfortable seeing [the victims'] names on his bank statements . . . ." *Oloyede*, 933 F.3d at 316. This is but a selection of the evidence against Ogundele. He has not shown a reasonable probability that, but for counsel's failure to demand production of an "accounts ledger" seized from his home, the result of the proceeding would have been different.[7]

The Court next addresses Ogundele's claim that his counsel was ineffective for not investigating and locating paid receipts and invoices in Nigeria that Ogundele says would have explained the unverified, suspicious transactions in the government's summary charts. ECF 1027-1, at 20. Again, other than his unsworn word, Ogundele offers no proof that these paid receipts and invoices in Nigeria existed. Even if they did, and if they had been introduced into evidence, Ogundele ignores the mountain of other incriminating evidence against him. He has not shown there is a reasonable probability that the trial outcome would have been difference if his counsel

---

[7] Ogundele suggests the government may have violated Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce the "accounts ledger." ECF 1027-1, at 20. An alleged *Brady* violation is not a basis for relief "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Like his *Strickland* claim, Ogundele cannot demonstrate a reasonable probability that the ledger's disclosure—if, in fact, the ledger actually existed—would have led to a different result at trial.

had located paid receipts and invoices in Nigeria that provided an innocent explanation for the unverified transactions in the government's summary charts.[8]

Ogundele has not shown his counsel provided ineffective assistance. He is not entitled to relief under § 2255.

## IV.     Certificate of Appealability

The accompanying Order is a final order adverse to Ogundele. Thus, the Court must issue or deny a certificate of appealability. Rule 11(a), *Rules Governing Section 2255 Cases in the U.S. Dist. Cts.* Ogundele must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a § 2255 petition on the merits, as here, a petitioner may satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ogundele has failed to demonstrate that a certificate of appealability should issue. He still may request that

---

[8] Ogundele does not argue his attorney was ineffective for not cross-examining government witness who prepared the Rule 1006 summary charts about why they included some financial transactions but not others. Even if Ogundele had made this argument, he has not established counsel's performance was deficient or that it prejudiced him. Testimony by an FBI agent explaining why the agent chose to include certain financial transactions in the government's summary charts would have highlighted the incriminating evidence against Ogundele. Counsel's failure to cross-examine government witnesses about the criteria used to create the summary charts was not deficient. As for prejudice, Ogundele has not shown there is a reasonable probability that questioning the government's witnesses about the selection criteria would have led to a different result. Ogundele's conviction was supported by the testimony of victims who deposited money into Ogundele's account, bank records showing Ogundele transferred the victims' money to offshore accounts shortly after the funds were received, evidence that Ogundele's wife accepted money from victims at Ogundele's direction, and Ogundele's admissions to law enforcement that he did not know the people depositing thousands of dollars into his bank account and he suspected the deposits were fraudulent.

the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

**V.      Conclusion**

For the reasons stated in this memorandum opinion, the Court denies Ogundele's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court declines to issue a certificate of appealability.

A separate Order follows.

DATED this 25th day of March, 2024.

_____
Deborah L. Boardman
United States District Judge